# In the United States Court of Federal Claims

No. 20-1784

(Filed: August 19, 2021)

| | | |
|---|---|---|
| **CHEVRON U.S.A. INC. et al.**, | ) | Suit for breach of contract; indemnity clause in contracts for production of high-octane gasoline during World War II; jurisdiction under the Contract Settlement Act of 1944, repealed but preserved in this case under the savings clause of the repealer; effect of a release; factual issues bar summary judgment |
| Plaintiffs, | ) | |
| v. | ) | |
| **UNITED STATES**, | ) | |
| Defendant. | ) | |

Michael W. Kirk, Cooper & Kirk, PLLC, Washington, D.C. for plaintiffs.  With him on briefs were Vincent J. Colatriano and Shelby L. Baird, Cooper & Kirk, PLLC, Washington, D.C., Christopher H. Marraro, Baker & Hostetler LLP, Washington, D.C., and Bridget S. McCabe, Baker & Hostetler LLP, Los Angeles, California.

Stephen C. Tosini, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C. for the United States.  With him on briefs were Brian M. Boynton, Acting Assistant Attorney General, Civil Division, Robert E. Kirschman, Jr., Director, and Franklin E. White, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.

**OPINION & ORDER**

LETTOW, Senior Judge.

This case has its roots in events that occurred during World War II, over 75 years ago.  Plaintiffs Chevron U.S.A. Inc., Texaco Downstream Properties Inc., and Union Oil Company of California (collectively, "the oil companies"), have filed suit against the United States for breach of contract regarding the government's failure to indemnify the oil companies for "environmental response costs . . . incurred due to the production of high-octane aviation gasoline ('avgas') on behalf of the United States during World War II."  Compl. ¶ 2, ECF No. 1.

Pending before the court is the government's motion to dismiss in part and plaintiffs' motion for partial summary judgment.  For some aspects of the oil companies' claims, the government's motion contends that this court lacks jurisdiction and that plaintiffs have failed to state a claim upon which relief can be granted.  Def.'s Mot. to Dismiss in Part ("Def.'s Mot."), ECF No. 7.  Plaintiffs respond with a cross-motion for partial summary judgment on the issues of liability under the avgas contracts and attendant claim-preparation costs and interest under the Contract Settlement Act of 1944 ("CSA").  Pls.' Mot for Partial Summ. J. ("Pls.' Cross-Mot."),

ECF No. 10; Pls.' Mem., ECF No. 10-1.  Primarily at issue is a question whether the court has jurisdiction over claims under the CSA.  That question is resolved in favor of the oil companies based on a recent decision of the United States Court of Appeals for the Federal Circuit.  *See Shell Oil Co. v. United States*, __ F.4th __, 2021 WL 3377502 (Fed. Cir. Aug. 4, 2021) ("*Shell Oil IV*").[1]  Based on the Circuit's decision, the court finds that it maintains jurisdiction over these claims under the CSA, and that plaintiffs may proceed with their suit pursuant to the CSA.  Also at issue is the effect of a release entered by one of the oil companies in 1949, but that release does not bar future claims that were unknown and unknowable at the time of signing, as these were.  Other issues raised by the parties require additional discovery and resolution of facts not before the court.  Therefore, the government's motion to dismiss is DENIED and plaintiffs' motion for partial summary judgment is GRANTED IN PART.

## BACKGROUND[2]

### *A. The Avgas Contracts*

Upon entering World War II in 1941, the United States sought high-octane avgas as a critical refinery product that "enabled aircraft to fly faster and higher, with improved rates of climb and higher payload carrying capacity."  *Shell Oil II*, 751 F.3d at 1285.  As such, high-octane avgas "was essential to the United States' war effort."  *Id*. (citation omitted).  The government contracted with various oil companies, including the predecessors-in-interest of the plaintiff companies, "to produce maximum quantities of high-octane avgas" to meet the wartime requirements.  Pls.' Mem. at 2.  Specifically, plaintiffs cite seven contracts and amendments signed between March 1942 and April 1944 as the bases for their claims.  Compl. ¶ 16; *see also* Compl. Exs. A-G, ECF Nos. 1-1 to 1-7.  In exchange, the oil companies were provided a modest profit, and, in addition, the contracts included an indemnity provision stating that, "Buyer shall pay in addition to the prices as established . . . any new or additional taxes, fees, or charges, other than income, excess profits, or corporate franchise taxes, which Seller may be required by any municipal, state, or federal law . . . to collect or pay by reason of the production, manufacture, sale or delivery of [avgas]."  Compl. Ex. A at 17.  By this clause, the companies contend that the government "agreed to compensate the Oil Companies for all of their expenses and indemnify the Oil Companies for the costs imposed on them resulting from any later-enacted laws, including the costs of cleaning up wastes associated with the wartime production of avgas."  Compl. ¶ 14.  The oil companies aver that they "performed all relevant duties" required by the contracts, and in doing so "produc[ed] millions of barrels of avgas under the direction of the

---

[1] Shell Oil was a precedent-setting litigation involving four separate decisions by the Federal Circuit after rulings by four separate judges of this court.  *See Shell Oil IV*, __ F.4th __, 2021 WL 3377502; *Shell Oil Co. v. United States*, 896 F.3d 1299 (Fed. Cir. 2018) ("*Shell Oil III*") (damages decision); *Shell Oil Co. v. United States*, 751 F.3d 1282 (Fed. Cir. 2014) ("*Shell Oil II*") (liability decision); *Shell Oil Co. v. United States*, 672 F.3d 1283 (Fed. Cir. 2012) ("*Shell Oil I*") (recusal decision).

[2] The recitations that follow do not constitute findings of fact, but rather are recitals attendant to the pending motions and reflect matters drawn from the complaint, the parties' briefs, and records and documents appended to the complaint and briefs.

United States."  Compl. ¶ 23.  The government terminated the contracts at the conclusion of World War II.  Compl. ¶ 25.

In 1949, following the end of the war, the government and Tide Water Associated Oil Company, operator of the Avon refinery and a predecessor-in-interest of plaintiff Texaco, entered into a mutual release agreement which is the focus of the government's motion to dismiss in part.  *See* Def.'s Mot. at 3.  The agreement stated that "Tide Water Associated Oil Company releases [the government] of any and all liability resulting from termination of the aforesaid contract[] dated May 19, 1943 . . . and with respect to any other provisions thereunder."  Def.'s Mot. Ex. 1, ECF No. 7-1.

A number of years after World War II and the termination of the avgas contracts, Congress in 1980 enacted the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") and the Hazard and Solid Waste Amendments to the Resource Conservation and Recovery Act ("RCRA") in 1984.  Compl. ¶ 37.  CERCLA imposes liability on facilities where hazardous substances have been disposed and remedial measures are required, while RCRA mandates requirements for disposal of hazardous waste and the closing and retrofitting of facilities.  *See* Compl. ¶¶ 38, 41.  The oil companies state that they incurred expenses complying with CERCLA-related consent decrees and litigation and "were required to expend (and did expend) substantial sums on environmental investigations . . . and remediation for waste . . . attributable to the Avgas Contracts" under RCRA.  Compl. ¶¶ 39-42.  The oil companies cite their compliance with state environmental laws, including environmental cleanup efforts around refineries required in California and Texas.  Compl. ¶ 42.  Plaintiffs argue that, under the avgas contracts, these costs are expenses attributable to avgas production and "are the contractual responsibility of the United States."  Compl. ¶ 42.

### B.  Procedural History

The oil companies submitted a written demand to the General Services Administration ("GSA") on June 8, 2020, but it was subsequently denied on September 8, 2020.  Compl. ¶ 51.  The oil companies then filed their complaint in this court on December 7, 2020, for breach of contract, seeking at least $65 million as well as interest, accounting and clerical costs, and attorneys' fees.  *See* Compl. ¶ 73.  On February 3, 2021, the government filed its motion to dismiss the complaint in part.  *See* Def.'s Mot.  The government advances two arguments in its motion: first, that this court lacks jurisdiction to adjudicate claims under the CSA, and second, that the mutual release agreement established by the government and Texaco's predecessor-in-interest requires dismissal of the claims related to the Avon refinery contracts.  *Id.* at 1-3.  The oil companies filed their motion for partial summary judgment and response on April 2, 2021, seeking summary judgment on the government's liability for breach of the avgas contracts, whether the CSA governs the claims, and whether the oil companies are permitted to recover costs and statutory interest under the CSA.  Pls.' Cross-Mot. at 1.  Subsequently, the cross-motions were fully briefed.  *See* Def.'s Resp. & Reply ("Def.'s Reply"), ECF No. 17; Pls.' Reply, ECF No. 22, with the submission of the last brief on July 15, 2021.

**STANDARDS FOR DECISION**

*A. Motion to Dismiss*

*1. Rule 12(b)(1) – Lack of Subject-Matter Jurisdiction*

The Tucker Act provides this court with jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C. § 1491(a)(1).  To establish this court's jurisdiction under the Tucker Act, the oil companies must "identify a substantive right for money damages against the United States separate from the Tucker Act."  *Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004) (citation omitted).

The plaintiffs must establish jurisdiction by a preponderance of the evidence.  *See Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011) (citing *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988)).  When ruling on the government's motion to dismiss for lack of jurisdiction, the court must "accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff."  *Id.* (citing *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995)).

*2. Rule 12(b)(6) – Failure to State a Claim Upon Which Relief Can Be Granted*

Under Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"), a complaint will survive a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  The factual matters alleged "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Twombly*, 550 U.S. at 555-56 (citations omitted).

When reviewing the complaint, "the court must accept as true the complaint's undisputed factual allegations and should construe them in a light most favorable to the plaintiff."  *Cambridge v. United States*, 558 F.3d 1331, 1335 (Fed. Cir. 2009) (citing *Papasan v. Allain*, 478 U.S. 265, 283 (1986)) (additional citation omitted).  Conclusory statements of law and fact, however, "are not entitled to the assumption of truth" and "must be supported by factual allegations."  *Iqbal*, 556 U.S. at 679.  "'[N]aked assertion[s]' devoid of 'further factual enhancement'" are insufficient to state a claim.  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557); *accord Bradley v. Chiron Corp.*, 136 F.3d 1317, 1322 (Fed. Cir. 1998) ("Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim.").

*B. Summary Judgment*

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). A material fact is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (interpreting Fed. R. Civ. P. 56).[3] A genuine dispute exists when the finder of fact may reasonably resolve the dispute in favor of either party. *Id.* at 250.

The movant bears the burden of demonstrating the absence of any genuine disputes of material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), and must "cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations[,] . . . admissions, interrogatory answers, or other materials," RCFC 56(c)(1)(A). The court may consider other materials in the record even if not cited by the parties. RCFC 56(c)(3). "[T]he inferences to be drawn . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). If the record taken as a whole "could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'" and summary judgment is appropriate. *Id.* (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

**ANALYSIS**

*A. Contract Settlement Act*

The court's analysis is guided by the result in *Shell Oil IV*, which forecloses the government's contention that this court does not have jurisdiction over plaintiffs' claims under the CSA and must "dismiss all aspects of the oil companies' claim that rely on the CSA." *Compare Shell Oil IV*, ___ F.4th at ___-___, 2021 WL 3377502, at **7-9, *with* Def.'s Mot. at 6. Congress repealed the CSA in 2011. Def.'s Mot. at 6-7. Critical to this case, however, the repealer statute contained a savings clause that provided that the CSA was repealed "except for the rights and duties that matured, penalties that were incurred, and proceedings that were begun before the date of enactment of this Act." Pub. L. No 111-350, § 7, 124 Stat. 3677, 3855. As a result, defendant contends that "both 'rights' and 'duties' must have 'matured' as of January 4, 2011, for a claim to be cognizable under the CSA." Def.'s Mot. at 7.[4]

The court previously confronted this issue in *Shell Oil Co. v. United States*, 148 Fed. Cl. 781, 785 (2020), *aff'd*, *Shell Oil IV*, ___ F.4th ___, 2021 WL 3377502. Addressing similar arguments by the government in that case, this court found that it had jurisdiction over the claims pursuant to the CSA "because the rights and duties of the parties [under the avgas contracts] had

---

[3] Because RCFC 56 mirrors Fed. R. Civ. P. 56, the rules should be interpreted *in pari materia*.

[4] The government raised this argument prior to the Federal Circuit's decision in *Shell Oil IV*. Briefing on the cross-motions was completed on July 15, 2021, and the Federal Circuit issued its decision in *Shell Oil IV* on August 4, 2021.

matured before the repealing statute's enactment." *Id.* at 793 (footnote omitted).  Therefore, the court held that "the government was liable for remediation costs incurred between November 30, 2015 through September 30, 2019." *Shell Oil IV*, __ F.4th __, 2021 WL 3377502, at *1.  The Federal Circuit affirmed in *Shell Oil IV*, holding that the rights and duties had matured before the repealing statute was enacted and further stating that "the government's duty to indemnify was triggered, at the latest, when the Oil Companies were found liable under CERCLA" which "occurred in the 1990s, well before the CSA's repeal."  *Id.* at *8 (internal quotation marks and citations omitted).  Thus, because "the government's duty to indemnify the Oil Companies and the Oil Companies' right to reimbursement for remediation costs under the Avgas Contracts both matured well before the repealer statute's enactment," this court "had jurisdiction over the Oil Companies' CSA claims."  *Id.* at *9.

The Federal Circuit's decision in *Shell Oil IV* definitively establishes that this court has jurisdiction over the oil companies' claims.  Therefore, to the extent that the oil companies seek summary judgment on the issue of whether the court has jurisdiction under the CSA and whether plaintiffs' can proceed with their claim pursuant to it, plaintiffs' motion for summary judgment is granted.

### B.  *Avon Mutual Release Agreement*

In its motion to dismiss, the United States argues that Texaco's predecessor-in-interest "Tide Water released the United States from any past or future liability under the 'Taxes' clause, which forms the sole basis of plaintiffs' Avon claims."  Def.'s Mot. at 13.  The government avers that the "mutual release agreement is enforceable" and that due to this release of liability, "plaintiffs have failed to state a claim for any damages at that facility under that contract."  *Id.* at 13-14.  The oil companies cross-move for summary judgment on this issue, arguing that the mutual release, "when read in accordance with its plain language and governing law, clearly establishes that Tidewater did not release the [g]overnment from the claim at issue in this action."  Pls.' Mem. at 36.  The oil companies contend that absent language to the contrary, general releases of liability only extend to claims that "were known or . . . 'should have been known at the time of [the release].'"  *Id.* at 37 (alteration in original) (quoting *Augustine Med., Inc. v. Progressive Dynamics, Inc.*, 194 F.3d 1367, 1373 (Fed. Cir. 1999)).

The document at issue is a letter to Tide Water, dated February 25, 1949.  Def.'s Mot. Ex. 1.[5]  The document refers to negotiations conducted by letter and telegram between representatives of Tide Water and the Reconstruction Finance Corporation, a representative of the United States.  *See id.*  The letter states that during those negotiations, Tide Water indicated that it "would be willing to release Reconstruction Finance Corporation unconditionally from termination or other claims which were then pending or contemplated" but that such "mutual releases on all claims should be deferred until completion of the reimbursement plan audits."  *Id.* at 1.  The audits were completed, and Tide Water and the Reconstruction Finance Corporation reached a settlement.  *Id.* at 1-2.  The letter culminated with the following agreement: "It is

---

[5] The release agreement letter was attached to defendant's motion and accompanied by a declaration from Kelly Morrow, attesting to its authenticity and completeness.  *See* Def.'s Mot. Ex 1 (Decl. of Kelly Morrow).

therefore mutually understood as between the parties hereto that Tide Water Associated Oil Company releases [Reconstruction Finance Corporation] of any and all liability resulting from the termination of the aforesaid contracts dated May 19, 1943 and July 1, 1945 and with respect to any other provisions thereunder." *Id.* at 2. The letter was signed by Tide Water's representative on March 4, 1949. *Id.*

The key element of this dispute concerns whether a general release of liability can release a future claim that is not known, contemplated, or knowable at the time of the release agreement. A release is "a writing providing that a duty owed to the maker of the release is discharged immediately or on the occurrence of a condition." Restatement (Second) of Contracts § 284(1) (1981). A general release "is designed to settle not only the specific differences between the parties set forth within it, but all claims between the parties of every kind and character, including . . . those unknown at that time, so long as they arose prior to the date of the release." 29 Williston on Contracts § 73:4 (4th ed. 2021). A release, therefore, covers matters that "may fairly be said to have been within the contemplation of the parties at the time of its execution." *Id.* § 73:10 (footnote omitted). This generally only extends to "all present, but not future claims." *Id.* (footnote omitted). However, under certain circumstances, "a valid release may encompass unknown claims and damages that develop in the future." *Id.* (citing *Simpson v. Lykes Bros. Inc.*, 22 F.3d 601, 602 (5th Cir. 1994) (additional citations omitted) (allowing release of future, unknown claims when "[t]he release expressly covers unknown events and exposure as well as future damages both known and unknown.").[6]

This understanding is supported by *Augustine Medical*, in which the Federal Circuit stated that "[t]he rule for releases is that absent special vitiating circumstances, a general release bars claims based upon events occurring prior to the date of the release. And no exception to this rule should be implied for a claim whose facts were well enough known for the maker of the release to frame a general description of it and request an explicit reservation." 194 F.3d at 1373 (internal quotations omitted) (quoting *Johnson, Drake & Piper, Inc. v. United States*, 531 F.2d 1037, 1047 (Ct. Cl. 1976)). Further, the Court of Claims in *Johnson, Drake & Piper* found that "unknown claims" can be covered by a release provided that the plaintiff has access to the facts underlying those claims, regardless of the whether plaintiff appreciated their significance. *See* 531 F.2d at 1048. "Most prominent among the circumstances" in that case, the court suggested, was that "with knowledge of the facts constituting the present claims, plaintiff nevertheless expressed full agreement" to the release. *Id.* This court in *Baha v. United States* synthesized this rule to state "[i]f a party who executes such a general release has knowledge of facts sufficient to constitute a claim at the time of executing the general release and wishes to make an exception for such a claim, that party bears the burden of manifesting his intent to do so with an 'explicit

---

[6] Both the Supreme Court and the Federal Circuit have recognized that courts may use the Restatement on Contracts as an authoritative source. *See Mobil Oil Expl. & Producing Se, Inc. v. United States*, 530 U.S. 604, 608 (2000) ("The Restatement of Contracts reflects many of the principles of contract law that are applicable to this action."); *Hansen Bancorp, Inc. v. United States*, 367 F.3d 1297, 1308 n.9 (Fed. Cir. 2004) (citation omitted). Additionally, both Courts have relied upon *Williston on Contracts*. *See M&G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 428 (2015); *Stockton East Water Dist. v. United* States, 583 F.3d 1344, 1358 (Fed. Cir. 2009).

reservation.'" 144 Fed. Cl. 500, 505 (2019) (quoting *Augustine*, 194 F.3d at 1373) (additional citation omitted).[7]

Courts that have found that general releases apply to future claims that were unknown or unknowable at the time of contracting have required the release to either expressly refer to future claims or include language that indicates prospective application. For example, the settlement and release agreement at issue in *Augustine* stated that plaintiff would "release and forever discharge [defendant] from any and all manner of action or actions . . . that [plaintiff] and/or its owners *have, have had, or may have* against [defendant]." 194 F.3d at 1369 (emphasis in original). The Federal Circuit found that use of the phrase "may have" was "necessarily future-oriented" and therefore "implie[d] a *future possibility* of [plaintiff] having a claim." *Id.* at 1371 (emphasis in original).

The oil companies assert that at the time of signing the release, Tide Water was not, nor could it have been, aware of legislation enacted more than thirty years later requiring remediation efforts and imposing retroactive liability. *See* Pls.' Mem. at 44-45 (citing *Penn Cent., Corp. v. United States*, 862 F. Supp. 437, 450 (Reg'l Rail Reorg. Ct. 1994) ("CERCLA is unique. It radically changed the horizon of environmental law by giving the government enforcement tools far beyond its previous capacity.")) The government does not challenge plaintiffs' posture in this respect, but rather indicates that "Tide Water was fully aware when it released 'any and all liability' under 'any . . . provision' of the avgas contract, that it was releasing 'any and all' claims for 'new' 'charges' under the 'taxes' provision." Def.'s Reply at 21. For this proposition, the government relies on *United States v. William Cramp & Sons Ship & Engine Building Co.*, 206 U.S. 118 (1907). *See* Def.'s Reply at 15. Notably, the Supreme Court in *William Cramp* upheld a release encompassing "all claims of any kind or description under or by virtue of said contract." 206 U.S. at 127. The Court additionally stated that "[i]f the parties intend to leave some things open and unsettled, their intent so to do should be made manifest." *Id.* at 128. In that respect, the Court devoted the bulk of its analysis to the second half of the clause, determining whether the claims arose "under or by virtue of said contract" rather than to a reading of "all claims of any kind or description." *See id.* at 127-28. Importantly, unlike the present case, the claims at issue accrued prior to the date of the release. *Id.* at 112.

---

[7] The oil companies counter with reliance on *Duhame v. United States*, 133 Ct. Cl. 360, 363 (1955). *See* Pls.' Mem. at 38-39. The Court of Claims in *Duhame*, referring to its prior opinion in *Harrison Eng'g & Constr. Corp. v. United States*, 107 Ct. Cl. 205 (1946), stated "that a release did not, where both parties were in ignorance of an additional item of indebtedness, and had no intention to pay or accept less than was justly due, cancel the unknown item." *Duhame*, 133 Ct. Cl. at 363. As the government correctly notes, however, *Duhame* could be understood as case of "mutual mistake warranting reformation." Def.'s Reply. at 22. The Court of Claims' reference in *Duhame* to *Harrison*, and decision not to reevaluate *Harrison's* holding regarding mutual mistake and its reformation of a contractual release, support this argument. *See Duhame*, 133 Ct. Cl. at 363 ("The Government asks us to overrule the *Harrison* decision, but, upon reconsideration, we are content with it."); *Harrison*, 107 Ct. Cl. at 208 ("We think the release as written . . . covered and was intended to cover all claims that the plaintiffs had arising out of this contract. The difficulty is that this intention was induced by a mistake of the parties."). At most, *Duhame* stands for the proposition that some claims can survive a general release.

8

Tide Water did not have "knowledge of the facts constituting the present claims" at the time it executed the release, *Johnston, Drake & Piper*, 531 F.2d at 1048, and the claims at issue in this case were future claims that were not "within the contemplation of the parties at the time of its execution," 29 Williston on Contracts § 73:10. Additionally, the language "any and all liability resulting from the termination of the aforesaid contracts . . . and with respect to any other provisions thereunder," Def.'s Mot. Ex. 1, does not constitute "future-oriented" language necessary to "impl[y] a future possibility" of a claim, *Augustine*, 194 F.3d at 1371 (emphasis omitted). In short, Tide Water did not release the claims at issue in this case and therefore, the claims brought by Texaco, its successor-in-interest, may proceed.

### C.  *Factual Issues on Summary Judgment*

Plaintiffs additionally ask this court to hold that that the United States is liable under the avgas contracts in this case. Pls.' Mem. at 12-14. The oil companies correctly state that the Federal Circuit has found the United States to be liable under the indemnification provision of other avgas contracts for environmental response costs. *Id.* at 12-13 (citing *Shell Oil II*, 75 F.3d at 1290). The oil companies further state that "the Federal Circuit interpreted certain avgas contracts—identical in all material respects to the contracts here—to require the Government to reimburse the Oil Companies for their CERCLA charges." Pls.' Reply at 22 (internal quotation marks omitted) (quoting *Shell Oil II*, 751 F.3d at 1285). The government contends that the oil companies have provided "no evidence linking any activity to the production of avgas during WWII, let alone evidence establishing that any cost would not have been incurred 'but for' the production of contract avgas." Def.'s Reply at 38. Therefore, according to the government, the oil companies have failed to prove causation. *Id.* Plaintiffs assert that the Federal Circuit foreclosed this argument in its damages opinion in *Shell Oil*. Pls.' Reply at 24 (*citing Shell Oil III*, 896 F.3d at 1307-09). The court agrees with the government.

To establish a case for breach of contract, plaintiffs bear the burden of demonstrating a valid contract between the parties, a duty arising out of that contract, a breach of that duty, and damages caused by the breach. *See Shell Oil Co. v. United States*, 130 Fed. Cl. 8, 34 (2017) (citing *San Carlos Irrigation & Drainage Dist. v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989)), *aff'd*, *Shell Oil III*, 896 F.3d 1299. The court concurs that the precedents established by the Federal Circuit in the *Shell Oil* litigation are applicable to this case. Even so, the court finds that there are genuine disputes as to the existence of damages that are causally connected to the avgas contracts and those disputes preclude summary judgment on liability. Despite the oil companies' contentions otherwise, *see* Pls.' Reply at 24 n. 13, proof of causation is necessary to establishing liability for breach of contract, *see San Carlos Irrigation*, 877 F.2d at 959; *Shell Oil III*, 896 F.3d at 1307 (stating that the phrase "by reason of" "requires at least a showing of but for causation") (internal quotation marks and citations omitted).

This present situation differs from the *Shell Oil* litigation in that plaintiffs here have not proven the existence of damages that stem from WWII production of avgas. In a decision in 2014 in *Shell Oil*, a judge of this court had denied summary judgment to the plaintiffs on the issue of damages, noting that "further proceedings would have been necessary for the Court to reach a final determination" on that issue. *Shell Oil Co. v. United States*, 108 Fed. Cl. 422, 448 (2013), *rev'd on other grounds*, *Shell Oil II*, 751 F.3d 1282. The then-presiding judge stated that

there was a genuine dispute of fact as to what portion of the pertinent waste was created "by reason of the avgas program," and that factual issue was not adequately answered by evidence or stipulations currently before the Court. *Id.* On appeal, the Federal Circuit reversed this court's then-concurrent grant of summary judgment to the government, but in doing so, it agreed with the court on the issue of damages and remanded for trial. *Shell Oil II*, 751 F.3d at 1285. Specifically, the case was remanded "to determine how much acid waste at the McColl site was 'by reason of' the avgas contracts." *Id.* at 1303. The question on remand, therefore, was the extent to which the claimed costs were attributable to the avgas program, akin to the question here whether, and to what extent, there was a causal link between the avgas contracts and the costs incurred.

This understanding comports with the fact that there had been a finding of damages previously in the *Shell Oil* litigation. *See* Def.'s Reply at 37-38. In that instance, a district court in California hearing remedial issues had found that "[t]he hazardous waste located at the McColl Site consists primarily of acid sludge byproducts resulting from alkylation and other acid treating processes used in the manufacture of 100-octane aviation gasoline . . . and other refinery products during World War II." *United States v. Shell Oil Co.*, 13 F. Supp. 2d 1018, 1020 (C.D. Cal. 1998), *aff'd in part, rev'd in part*, 294 F.3d 1045 (9th Cir. 2002). That court likewise had found a causal connection between the production of avgas, waste byproducts, and ultimate dumping of that waste that occurred between June 1942 and September 1946. *Id.* at 1023. Comparable findings have not been made in this case and would be inappropriate now to make on summary judgment given the record provided to the court. Plaintiffs have not met their burden on this aspect of summary judgment, *see Celotex*, 477 U.S. at 322, and therefore their cross-motion in that respect on liability is denied.

## CONCLUSION

For the reasons stated, defendant's motion to dismiss in part is DENIED and plaintiffs' motion for partial summary judgment is GRANTED IN PART insofar as it concerns this court's jurisdiction under the CSA, but is otherwise denied.

The government shall file its answer to plaintiffs' complaint on or before September 13, 2021.

It is so **ORDERED**.

                                                  s/ Charles F. Lettow
                                                  Charles F. Lettow
                                                  Senior Judge