# In the United States Court of Federal Claims

No. 20-1784

(Filed: July 13, 2022)

|  |  |
|---|---|
| **CHEVRON U.S.A. INC., et al.**, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> **UNITED STATES**, ) <br> ) <br> Defendant. ) <br> ) | Motion for partial summary judgment; disputes regarding avgas contracts entered during World War II |

Michael W. Kirk, Cooper & Kirk, PLLC, Washington, D.C. for plaintiffs. With him on the briefs were Vincent J. Colatriano, J. Joel Alicea, and Tiernan B. Kane, Cooper & Kirk, PLLC, Washington, D.C., Christopher H. Marraro, Baker & Hostetler LLP, Washington, D.C., and Bridget S. McCabe, Baker & Hostetler LLP, Los Angeles, California.

Matthew P. Roche, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C. for the United States. With him on the briefs were Brian M. Boynton, Principal Deputy Assistant Attorney General, Civil Division, Patricia M. McCarthy, Director, and Franklin E. White, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.

## **OPINION & ORDER**

LETTOW, Senior Judge.

Pending before the court is plaintiffs' motion for partial summary judgment as to seven affirmative defenses raised in defendant's answer to plaintiffs' complaint: laches, contributory negligence, proximate cause, res judicata, offset of damages to account for insurance payments, prior material breach, and release. *See* Pls.' Mot. for Partial Summary J. ("Pls.' Mot."), ECF No. 32; Def.'s Answer ¶¶ 1-9, ECF No. 27.[1] Plaintiffs' partial summary judgment motion has been fully briefed. *See* Def.'s Opp'n, ECF No. 42; Pls.' Reply, ECF No. 45. For the reasons stated, plaintiffs' motion is DENIED IN PART and GRANTED IN PART.

---

[1] Plaintiffs are Chevron U.S.A. Inc., Texaco Downstream Properties Inc., and Union Oil Company of California (together, the "oil companies").

# BACKGROUND[2]

This case involves seven contracts entered into by the United States with oil companies to produce high-octane aviation gasoline ("avgas") during World War II as part of the war effort. Compl. ¶ 12, ECF No. 1; *see also* Compl., Exs. A-G, ECF Nos. 1-1 to 1-7. The contracts provided small profits for the oil companies, and, in exchange, they obligated the government to "indemnify the [o]il [c]ompanies for the costs imposed on them resulting from any later-enacted laws, including the costs of cleaning up wastes associated with the wartime production of avgas." Compl. ¶¶ 13-14. Specifically, the contracts stated that, "Buyer shall pay in addition to the prices as established . . . any new or additional taxes, fees, or charges, other than income, excess profits, or corporate franchise taxes, which Seller may be required by any municipal, state, or federal law . . . to collect or pay by reason of the production, manufacture, sale or delivery of [avgas]." Compl., Ex. A at 17 (representative of other contractual provisions).

Decades after the conclusion of World War II and the termination of the avgas contracts, Congress passed the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") in 1980 and the Hazardous and Solid Waste Amendments to the Resource Conservation and Recovery Act ("RCRA") in 1984. Comp. ¶ 37, *see also* 42 U.S.C. § 9601 *et seq*; 42 U.S.C. § 6901 *et seq.*. CERCLA imposes liability on facilities where hazardous substances have been disposed and remedial measures are required, while RCRA mandates requirements for disposal of hazardous waste and the closing and retrofitting of facilities. Compl. ¶¶ 38, 41. The oil companies aver that they incurred expenses pursuant to actions under both CERCLA and RCRA relating to disposal of avgas waste. Compl. ¶¶ 39-42. According to plaintiffs, the government is responsible for these expenses pursuant to the indemnification provision in the avgas contracts. Compl. ¶ 42.

Under the Contract Settlement Act, the oil companies may bring claims pursuant to wartime contracts before the General Services Administration ("GSA"), which plaintiffs did on June 9, 2020. Compl. ¶ 51.[3] GSA denied the oil companies' claims on September 8, 2020, after which plaintiffs filed their pending claims in this court on December 7, 2020. Compl. ¶ 51. The government moved to dismiss in part the oil companies' claims for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted. Def.'s Mot. to Dismiss, ECF No. 7. The court denied defendant's motion. *See Chevron U.S.A. v. United States*, 155 Fed. Cl. 344, 348 (2021). Defendant thereafter filed its answer to plaintiffs' complaint and raised affirmative defenses, seven of which are the subject of plaintiffs' present summary judgment motion: laches, contributory negligence, proximate cause, res judicata, offset of damages to account for insurance payments, prior material breach, and release.

---

[2] The recitations that follow do not constitute findings of fact, but rather are recitals attendant to the pending motions and reflect matters drawn from the complaint, the parties' briefs, and records and documents appended to the complaint and briefs.

[3] "Congress repealed the [Contract Settlement Act] in 2011." *Chevron*, 155 Fed. Cl. at 350. The repealing statute, however, "contained a savings clause" that preserves the court's jurisdiction over this case and others like it. *Id.*

**STANDARDS FOR DECISION**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) of the Rules of the Court of Federal Claims ("RCFC"). A material fact is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (interpreting Fed. R. Civ. P. 56).[4] A genuine dispute exists when the finder of fact may reasonably resolve the dispute in favor of either party. *Id.* at 250.

The movant bears the burden of demonstrating the absence of any genuine disputes of material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), and must "cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations[,] . . . admissions, interrogatory answers, or other materials," RCFC 56(c)(1)(A). The court may consider other materials in the record even if not cited by the parties. *See* RCFC 56(c)(3). "[T]he inferences to be drawn . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). If the record taken as a whole "could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'" and summary judgment is appropriate. *Id.* (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

**ANALYSIS**

The oil companies move for partial summary judgment on seven of the affirmative defenses that the government raised in its answer to plaintiffs' complaint. Defendant voluntarily withdrew the affirmative defense of res judicata in its opposition brief. *See* Def.'s Opp'n at 13. Furthermore, it avers that it raised the affirmative defense of release only to preserve the issue for appeal and that it will not brief or argue the point in response to plaintiffs' partial summary judgment motion. *See id.* at 24-25. Therefore, plaintiffs' motion is GRANTED as to defendant's affirmative defenses of res judicata and release. The remaining questions are whether, as a matter of law, the oil companies are entitled to summary judgment on the government's affirmative defenses of laches, contributory negligence, proximate cause, insurance offsets, and prior material breach.

*A. Laches*

Plaintiffs and the government dispute whether the Contract Settlement Act contained an express limitations period for bringing a war contractor claim, the answer to which determines whether the government may invoke the equitable defense of laches to bar plaintiffs' present claims. "Laches is 'a defense developed by courts of equity' to protect defendants against 'unreasonable, prejudicial delay in commencing suit.'" *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, ___ U.S. ___, 137 S.Ct. 954, 960 (2017) (quoting *Petrella v. Metro-*

---

[4] Because RCFC 56 mirrors Fed. R. Civ. P. 56, the rules should be interpreted *in pari materia*.

*Goldwyn-Mayer, Inc.*, 572 U.S. 663, 678 (2014)). "[T]he 'principal application' of laches 'was, and remains, to claims of an equitable cast for which the [l]egislature has provided no fixed time limitation.'" *Id.* at 961 (quoting *Petrella*, 572 U.S. at 678). "[T]he well-established general rule, often repeated by [the Supreme] Court, [is] that laches cannot be invoked to bar a claim for damages incurred within a limitations period specified by Congress." *Id.* at 963 (citing cases).

The Contract Settlement Act laid out a back-and-forth procedure for contracting agencies and war contractors to settle outstanding claims. First, "*[w]henever* the contracting agency responsible for settling any termination claim has not settled the claim by agreement or has so settled only a part of the claim, . . . the contracting agency *at any time* may determine the amount due on such claim or such unsettled part, and prepare written findings indicating the basis of the determination, and deliver a copy of such findings to the war contractor." 41 U.S.C. § 113(a) (1992) (emphasis added). Second, "*[w]henever* any war contractor is aggrieved by the findings of a contracting agency on his claim or part thereof or by its failure to make such findings in accordance with subsection (a) of this section, he may bring suit against the United States for such claim or such part thereof, in the United States Court of Federal Claims." *Id.* at § 113(b) (emphasis added). Finally, "[a] war contractor may initiate proceedings in accordance with subsection (b) of this section" within 90 days of receiving the contracting agency's decision or findings per Subsection (a) or within 1 year if the agency fails to "deliver such findings." *Id.* at § 113(c)(2).

Plaintiffs contend that Subsection 113(c)'s 90-day provision is the statute of limitations that triggers the application of the rule against permitting the laches defense when Congress has specified a limitations period. *See* Pls.' Mot. at 4-8. On the other hand, as the government observes, *see* Def.'s Opp'n at 4-7, Subsection 113(c) does not specify a limitations period in which a war contractor must bring a claim to a contracting agency. Rather, it specifies when the contractor must bring a claim to this court *after* raising it to the contracting agency. In these circumstances, 41 U.S.C. § 113 (1992) must be read in context to give meaning to the statute as a whole. *See Massachusetts v. Morash*, 490 U.S. 107, 115 (1989) ("[I]n expounding a statute, we are not guided by a single sentence or member of a sentence, but look to the provisions of the whole law." (internal alterations omitted) (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 51 (1987))). Subsection 113(c)(2) operates in conjunction with Subsections 113(a) and (b), which use the terms "[w]henever" and "at any time" when referring to the bringing and resolving of a war contractor's claim. These words indicate Congress' intent to permit later-arising claims and to not impose a time limit on contractors. *Cf. Ford Motor Co. v. United States*, 378 F.3d 1314, 1319 (Fed. Cir. 2004) (considering whether the government could be held liable to appellant for CERCLA damages that accrued post-contract termination and apparently agreeing with appellant's argument that "the CSA explicitly contemplated later-arising claims, and set no period of limitations"). Per *SCA Hygiene*, the government cannot invoke the equitable defense of laches because Congress indeed specified the limitations period to apply to claims under the Act, *i.e.*, "[w]henever" and "at any time."

The court therefore GRANTS plaintiffs' summary judgment motion as to the government's affirmative defense of laches.

4

*B. Contributory Negligence*

The oil companies and the government present contrasting interpretations of the avgas contracts' "any new or additional . . . charges" clause. Plaintiffs construe the clause to fully indemnify them even against their own negligence, *see* Pls.' Mot. at 8-10, while the government distinguishes the clause from similar clauses that the Federal Circuit has held were broad enough to indemnify a contractor's own negligence, *see* Def.'s Opp'n at 9-10 (distinguishing *Shell Oil Co. v. United States*, 751 F.3d 1282, 1294 (Fed. Cir. 2014) and *E.I. Du Pont de Nemours and Co., Inc. v. United States*, 365 F.3d 1367, 1370 (Fed. Cir. 2004)). "[A] contractual provision should not be construed to permit an indemnitee to recover for his own negligence unless the court is firmly convinced that such an interpretation reflects the intention of the parties." *United States v. Seckinger*, 397 U.S. 203, 211 (1970). In other words, "the mutual intention of the parties to this effect should appear with clarity from the face of the contract." *Id.* at 212. Yet, "a clause that is intended to encompass indemnification for the indemnitee's negligence" need not necessarily "include an 'indemnify and hold harmless' clause or . . . explicitly state that indemnification extends to injuries occasioned by the indemnitee's negligence." *Id.* at 212 n.17.

Here, the relevant avgas contracts do not explicitly indemnify the oil companies against their own negligence. Nor is it evident that the Federal Circuit held that, as a matter of law, the "any new or additional . . . charges" provision of the contracts applied to claims arising from plaintiffs' own negligence. *See Shell Oil*, 751 F.3d at 1294 ("The relevant provision in *Du[]Pont* made no mention of new or additional charges, yet was nonetheless found to encompass unforeseeable CERCLA liability. The avgas contracts' promise to reimburse for 'new or additional' charges must similarly extend to 'all claims, foreseeable or not.'" (quoting *Du Pont*, 365 F.3d at 1373)). Nonetheless, the discussion in *Shell Oil* was focused on whether that contractual language was broad enough to encompass unforeseeable claims arising from the yet-to-be-enacted CERCLA. Plaintiffs may therefore only succeed by demonstrating that the "any new or additional . . . charges" clause gives rise to an inference that the parties intended to indemnify the oil companies against their own negligence. Drawing all reasonable inferences in the government's favor as the party opposing the summary judgment motion, the court concludes that there exists a genuine dispute as to whether the "any new or additional . . . charges" clause demonstrates the parties' mutual intent to indemnify plaintiffs for their own negligence. Resolution of the dispute would be aided by development of the factual context in which it arises.

Plaintiffs' summary judgment motion therefore is DENIED as to defendant's affirmative defense of contributory negligence.

*C. Proximate Cause*

The oil companies dispute the government's affirmative defense that some of plaintiffs' claimed damages were not proximately caused by reason of the avgas contracts. *See* Pls.' Mot. at 11-12. Plaintiffs reason that because the Federal Circuit has interpreted the "any new or additional . . . charges" clause to indemnify the oil companies against "all claims, foreseeable or not," the government cannot conduct discovery into whether plaintiffs' claimed damages were proximately caused by reason of the avgas contracts, *i.e.*, foreseeability of damages. *Id.*

5

(emphasis omitted) (quoting *Shell Oil*, 751 F.3d at 1295). The government responds that the Federal Circuit's interpretation of the avgas contracts refers to unforeseeable claims but does not eliminate plaintiffs' burden to prove foreseeability when it comes to damages. *See* Def.'s Opp'n at 11-13.

"To recover for breach of contract, a party must allege and establish," *inter alia*, "damages caused by the breach." *San Carlos Irr. and Drainage Dist. v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989). To satisfy this requirement, one must show "(1) the damages were reasonably foreseeable by the breaching party at the time of contracting; (2) the breach is a substantial causal factor in the damages; and (3) the damages are shown with reasonable certainty." *Indiana Michigan Power Co. v. United States*, 422 F.3d 1369, 1373 (Fed. Cir. 2005); *see also Shell Oil Co. v. United States*, 130 Fed. Cl. 8, 34 (2017), *aff'd*, 896 F.3d 1299 (Fed. Cir. 2018). The parties' disagreement boils down to a difference of opinion about whether the contract's indemnity clause covered unforeseeable claims and unforeseeable damages. This disagreement demonstrates the existence of "material factual disputes about the scope of the contract," which renders summary judgment on an element of plaintiffs' burden of proof as to damages "inappropriate." *New England Specialty Servs., Inc. v. United States*, 148 Fed. Cl. 413, 417 (2020).[5]

Plaintiffs' summary judgment motion therefore is DENIED as to defendant's affirmative defense of proximate cause.

### D. Insurance Offset

Plaintiffs argue that the remote transaction and collateral source rules preclude defendant's affirmative defense that potential damages should be offset by any insurance payments that the oil companies received in relation to the avgas cleanup costs underlying the present dispute. *See* Pls.' Mot. at 15-19. Defendant responds that the remote transaction and collateral source rules do not apply and contends that plaintiffs seek a double recovery by preventing discovery into insurance payments. *See* Def.'s Opp'n at 13-22.

Foundational principles in contract law entitle the non-breaching party to recover "damages based on his expectation interest" in the contract "as measured by . . . the loss in the value to him of the other party's performance caused by its failure or deficiency." *Restatement (Second) of Contracts* § 347. However, "[n]o matter how reprehensible the breach, damages are generally limited to those required to compensate the injured party for lost expectation, for it is a fundamental tenet of the law of contract remedies that an injured party should not be put in a better position than had the contract been performed." *LaSalle Talman Bank, F.S.B. v. United States*, 317 F.3d 1363, 1371 (Fed. Cir. 2003) (quoting *Farnsworth on Contracts* 193 (2d ed. 1998)). Similarly, "[t]he principle that a party's liability is not reduced by payments or other

---

[5] This result is not an invitation for the government to relitigate any prior holdings of the Federal Circuit as to the scope of the avgas contracts' indemnity provision regarding foreseeability of CERCLA liability.

benefits received by the injured party from collateral sources is less compelling in the case of a breach of contract than in the case of a tort." *Restatement (Second) of Contracts* § 347, cmt. e.

Nevertheless, in the context of similar avgas litigation, the court has explained:

> Because of the "the endlessness and futility of the effort to follow every transaction to its ultimate result," the law does not generally "go beyond the first step" in calculating damages. *Southern Pac. Co. v. Darnell-Taenzer Lumber Co.*, 245 U.S. 531, 533-34, 38 S.Ct. 186, 62 L.Ed. 451 (1918). Paradigmatic of remote transactions that do go beyond the first step, and are thus irrelevant for calculating damages, are those involving insurance recoveries. *See id.* at 534, 38 S.Ct. 186 (noting that the recovery of insurance is not something with which defendants are concerned). "An injured party's recovery from third parties does not decrease the amount of the wrongdoer's liability." *Wisconsin Elec. Power Co. v. United States*, 90 Fed. Cl. 714, 794 (2009).

*Shell Oil Co. v. United States*, 148 Fed. Cl. 781, 796 (2020), *aff'd on other grounds*, 7 F.4th 1165 (Fed. Cir. 2021). As a matter of law, the oil companies are entitled to summary judgment on defendant's insurance offset defense because such paradigmatic remote transactions are irrelevant to calculating damages stemming from defendant's alleged breach of contract.

The oil companies' motion is therefore GRANTED as to the government's insurance offset affirmative defense.

### *E. Prior Material Breach*

The oil companies dispute the government's affirmative defense of prior material breach based on plaintiffs' failure to obtain liability insurance that would cover the United States as an additional insured. *See* Pls.' Mot. at 19-21. They contend that the avgas contracts at issue here did not require the oil companies to obtain liability insurance and, alternatively, that the government waived its right to claim breach of contract based on failure to obtain liability insurance even if the contracts did require it. *Id.* The government concedes that the avgas contracts do not support the affirmative defense of prior material breach because they did not obligate the oil companies to obtain liability insurance; however, it contends that discovery may reveal a post-formation change to the parties' contractual duties. *See* Def.'s Opp'n at 22-24. If not, the government promises to voluntarily withdraw the affirmative defense of prior material breach. *See id.* at 24. The parties' arguments turn on a factual question—whether a post-formation change of contract occurred—which would be inappropriate to address before permitting "adequate time for discovery." *Celotex*, 477 U.S. at 322.

The oil companies' motion is therefore DENIED as to the government's affirmative defense of prior material breach.

**CONCLUSION**

In summary, the oil companies' summary judgment motion is GRANTED IN PART and DENIED IN PART. Plaintiffs' motion is granted as to the government's affirmative defenses of laches, insurance offset, res judicata, and release; however, it is denied as to contributory negligence, proximate cause, and prior material breach.

It is so **ORDERED**.

                                                        s/ Charles F. Lettow
                                                        Charles F. Lettow
                                                        Senior Judge